IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-01833-PAB

RANDY PHIPPS,

     Applicant,

v.

RICK RAEMISCH, Director of the Colorado Department of Corrections,
MICHAEL MILLER, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

     Applicant, Randy Phipps, is a prisoner in the custody of the Colorado Department of Corrections. Mr. Phipps has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 14]. He is challenging the validity of his conviction and sentence in the District Court for Jefferson County, Colorado, Case Number 11CR961. Respondents have filed an Answer to Petition for Writ of Habeas Corpus [Docket No. 40], and Mr. Phipps filed a Reply to the People's Answer to Applicant's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 41]. After reviewing the Application, Answer, and Reply, along with the state court record, the Court denies relief on the remaining claims.

## I. BACKGROUND

     The relevant factual and procedural background was summarized by the Colorado Court of Appeals as follows:

During an investigation to detect child pornography shared over the Internet, the police remotely searched a computer onto which at least two files depicting child pornography had been downloaded. Using that computer's Internet Protocol (IP) address, the police determined that the computer was located in Phipps' home. The police obtained and executed a search warrant of Phipps' home.

Phipps was not home at the time of the search, but an officer spoke with him on the phone during the search and explained why his home was being searched. During that recorded phone call, Phipps admitted that he stored child pornography on his computer and that once the officer searched his computer, "his life was over." The police seized Phipps' computer, on which they found over thirty videos of children engaged in sexual acts.

One of these videos depicted Phipps' stepdaughter when she was approximately eight or nine years old. She was mostly nude, and the video showed Phipps instructing her to use sex toys as well as Phipps using sex toys on her. In her police interview, Phipps' stepdaughter identified herself and Phipps in the video and stated that Phipps had sexually assaulted her numerous times.

Phipps was charged with sexual assault on a child (position of trust – pattern of abuse) under sections 18-3-405.3(1), (2)(b), C.R.S. 2016; aggravated incest under section 18-6-302(1)(a), C.R.S. 2016; sexual exploitation of a child (inducement) under section 18-6-403(3)(a), C.R.S. 2016; and sexual exploitation of children (possession) under section 18-6-403(3)(b.5). The court found Phipps indigent and appointed counsel to represent him.

A plea agreement was negotiated and Phipps pleaded guilty to the sexual assault charge. In exchange, the district attorney dismissed the remaining charges and promised that the United States Attorney would not prosecute Phipps on child pornography charges.[1]

At the sentencing hearing, Phipps took responsibility for his crimes. He stated that he did not wish to put his family through a "horrific ordeal

---

[1] A Colorado district attorney does not have the power to agree that the United States will not prosecute a defendant. Presumably, either Phipps' counsel or the Colorado district attorney negotiated an agreement not to prosecute with the United States Attorney, although that agreement is not contained in the record.

with a jury trial," and that his "remorse, regrets, shame, despair, sadness, and sorrow cannot be measured."

In his motion for postconviction relief, Phipps made numerous claims of ineffective assistance of counsel. The arguments Phipps renews on appeal are:

• His counsel failed to challenge the legality of the initial, remote search of Phipps' computer, which violated his Fourth Amendment rights.

• His counsel's decision to waive the preliminary hearing constituted deficient performance.

• His counsel's failure to request a bond reduction constituted deficient performance.

• His counsel's failure to investigate and challenge the prosecution's forensic computer evidence or hire an expert to do so constituted deficient performance.

• His counsel failed to advise him that, as a condition of his parole eligibility, he might be required to reveal past crimes, exposing him to additional criminal charges.

• His counsel failed to advise him that evidence of his crimes might be destroyed after he pleaded guilty.

• His counsel failed to advise him that he might be ordered to pay restitution to his stepdaughter.

• His counsel misadvised him about the minimum amount of prison time he would have to serve before being eligible for parole.

• His counsel misled him with regard to whether he was pleading guilty to a crime of violence.

The district court did not hold a hearing, but concluded that the existing record demonstrated Phipps' claims failed one or both prongs of *Strickland*.

Docket No. 41-1at 2-6; *People v. Phipps,* 411 P.3d 1157, 1160-61 (Colo. App. 2017).

In the § 2254 Application, Mr. Phipps asserts the following claims:

- Claim 1: "The petitioner was coerced and enticed into pleading guilty to a crime of violence in repugnance to his 'non-negotiable' stance to not pleading guilty to a 'crime of violence.'" Docket No. 14 at 5, 10-11.

- Claim 2: "The government violated the defendant's 4th Amend. Rights, and attendant rights in the Colo. Const. regarding the right to be free from unreasonable searches and seizures, and or, right to privacy. And his federal and state rights to due process and equal protection." *Id.* at 6, 11-15.

- Claim 3: "Law enforcement, and the People, in reckless disregard for the truth, lied on the warrant-less search report and the sworn affidavit in support of a search warrant violating the petitioner's 4th Amend. rights in the U.S. Const. and attendant rights in the Colo. Const., and federal and state due process and equal protection." *Id.* at 6, 16-17.

- Claim 4: "Counsel failed to conduct independent investigation." *Id.* at 21-22.

- Claim 5: "The prosecutor destroyed evidence in this case, thereby suppressing it, not preserving it, and not presenting it for the defense to review the same original ESI evidence he did." *Id.* at 22-23.

- Claim 6: "Counsel was ineffective because he allowed the prosecutor to suppress ESI evidence, and did not compel them to provide the professional report of their 'botched' forensic examination." *Id.* at 23-24.

- Claim 7: "The district court, and or, the DA, and or, defense counsel conspired to falsify the sentencing transcripts by extracting substantial parts of the hearing of January 12, 2012." *Id.* at 24-25.

- Claim 8: "The petitioner claimed that the district court did redact, suppress and ignore the 140+ page post-conviction motion factually received by the court on May 14, 2014." *Id.* at 25-27.

- Claim 9: "The petitioner claimed that counsel's deliberately lied to him numerous times throughout the proceeding." *Id.* at 27-28.

- Claim 10: "The petitioner claimed he was not allowed to raise issues on appeal because of violations of his rights to federal and state due process and equal protection." *Id.* at 29.

- Claim 11: "The petitioner claimed 5th, 6th, and 14th Amend. violations in the U.S. Const. and accompanying rights in the Colo. Const. surrounding the sexual history review in the plea agreement." *Id.* at 29-30.

- Claim 12: "The petitioner claimed the prejudicial effect of his claims individually and cumulatively regarding IAC and prejudice under the 5th, 6th, and 14th Amend. Rights in the U.S. Const. And accompanying rights in the Colo. Const." *Id.* at 30.

- Claim 13: "The petitioner was erroneously advised that he would serve '60% or less' before being eligible for parole." *Id.*

The Court previously entered an Order to Dismiss in Part and for Answer and State Court Record, Docket No. 33, dismissing Claims 8 and 10 and any non-ineffective assistance of counsel arguments asserted in Claims 1-7. The Court will review the remaining ineffective assistance of counsel (IAC) claims under the standards set for below.

## II. STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Phipps liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) of the Anti-terrorism and Effective Death Penalty Act

("AEDPA") provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Phipps bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *See Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. In other words, the federal habeas court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, this

Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Phipps seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state‑court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly

7

established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407‑08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).  In conducting

this analysis, the Court "must determine what arguments or theories supported or . . .

could have supported[] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the Supreme] Court."  *Id*. at 102.  In addition, "review

under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the Court

presumes the state court's factual determinations are correct and Mr. Phipps bears the

burden of rebutting the presumption by clear and convincing evidence.  The

presumption of correctness applies to factual findings of the trial court as well as state

appellate courts.  *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015).  The

presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete even if Mr. Phipps demonstrates the existence of a constitutional violation. "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.") (internal quotation marks omitted); *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* any time it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review

of the entire state court record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).  Notably, however, a second prejudice inquiry under *Brecht* is unnecessary in the context of an ineffective assistance of counsel claim in which prejudice under *Strickland* is shown.  *See Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.  MERITS OF APPLICANT'S REMAINING CLAIMS

### A.  Clearly Established Federal Law

A defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.  To establish counsel was ineffective, Mr. Phipps must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.  Furthermore, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

"Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  Mr. Phipps bears the burden of overcoming this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be

constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Phipps also must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). A defendant is prejudiced by counsel's deficient performance that allegedly led to the improvident acceptance of a guilty plea if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In determining whether Mr. Phipps has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Phipps. *See Boyd*, 179 F.3d at 914.

If Mr. Phipps fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland*, 466 U.S. at 697. Furthermore, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

**B. Claim 1**

Mr. Phipps contends his counsel was ineffective in misleading him as to whether he was pleading guilty to a crime of violence. Docket No. 14 at 5, 10-11.

The Colorado Court of Appeals considered this claim and concluded that Mr.

Phipps failed to establish a constitutional violation:

> Phipps argues that his counsel misled him with regard to whether he was pleading guilty to a crime of violence.

> Phipps pleaded guilty to sexual assault on a child (position of trust – pattern of abuse), a class three felony under section 18-3-405(2)(d). A class three felony is presumptively punishable by a term of four to twelve years. § 18-1.3-401(1)(a)(V)(A), C.R.S. 2016. But because Phipps' crime was punishable as if it were a crime of violence under section 18-1.3-406, C.R.S. 2016, the minimum was the mid-point of the presumptive range (eight years) and the maximum was twice the top of that range (twenty-four years). § 18-1.3-401(8)(a)(I). The court advised him of this sentencing range at the providency hearing, and Phipps also was advised of this range in the plea agreement.

> While sexual assault on a child is not a 'defined' crime of violence, because it nevertheless is *treated* as a crime of violence for purposes of sentencing, it constitutes a 'per se' crime of violence. *Chavez v. People,* 2015 CO 62, ¶ 12.

> Phipps asserts that if he had been advised that the plea deal required him to plead guilty to "any crime that was associated in any way with violence or a crime of violence," he would have rejected the plea deal and insisted on going to trial.

> Phipps' argument fails both prongs of *Strickland.* Regarding the deficient performance prong, at the plea hearing, Phipps' counsel advised that court that:

>> [A] matter of great importance to my client is he does want the Court to know – and we will expand on this at sentencing – that violence – no use of violence or threat of violence was ever made. We realize this was a terrible crime, and we're not trying to lessen that at all. But this isn't a situation where the child was threatened, if you tell, this is going to happen to you. Nothing of that sort ever occurred.

> At sentencing, Phipps told the trial court that "there was never any violence or threats of violence, ever" and that "[t]here was never any violence. If [my son] heard [the victim] saying please don't, in her room one time, there were times that I spanked my kids."

13

Phipps' expressed position, reasonably construed by his plea counsel, the trial court, and this court, was that he would never plead guilty to a violent crime. In common usage, a violent crime is one that includes, as an element of the offense, "the use, attempted use, threatened use or substantial risk of use of physical force against the person or property of another." Black's Law Dictionary 453 (10th ed. 2014). Phipps did not plead guilty to a violent crime in that sense, and thus the record disproves that his counsel's performance was deficient.

As to the prejudice prong, Phipps' own statements explaining his reasons for pleading guilty refute his argument. At sentencing, Phipps stated that:

> The only right and proper choice of direction for me was to plead guilty, to take full responsibility for what I have done, what I put [the victim] through, my family – and my family through. I'm sorry. I could not put [the victim] or my family through the horrific ordeal with a jury trial.

In view of these statements, the record establishes that there is no reasonable probability that Phipps would have elected to proceed to trial if he had been advised that sexual assault on a child was a "per se" crime of violence. *Stovall*, ¶ 19.

Docket No. 41-1 at 22-24.

In the Application, Mr. Phipps first asserts that the Colorado Court of Appeals disregarded *Hill v. Lockhart* as the proper standard to evaluate prejudice for an IAC claim challenging a guilty plea. *See* Docket No. 41 at 9. Mr. Phipps also cites state law supporting his position that sexual assault of a child under C.R.S. § 18-3-405(2)(d) is a "crime of violence." *Id.* Mr. Phipps further alleges he was unaware that he was pleading guilty to a crime of violence, and that "if he was given the correct statutory information from counsel before he plead in this case. He would have insisted on trial and refused the plea deal." *Id.*

The Colorado Court of Appeals correctly identified and applied the two-part

*Strickland* test in rejecting Mr. Phipps' claim that counsel gave deficient advice regarding whether he was pleading guilty to a crime of violence by pleading guilty to sexual assault on a child (position of trust – pattern of abuse).  Docket No. 41-1 at 22-24.  While the Colorado Court of Appeals did not cite *Hill*, the state court followed its analysis in finding that Mr. Phipps could not demonstrate he was prejudiced by his counsel's performance. The Colorado Court of Appeals specifically determined that Mr. Phipps failed to demonstrate a "reasonable probability that Phipps would have elected to proceed if he had been advised that sexual assault on a child was a 'per se' crime of violence" for sentencing purposes.  *Id.* at 24.  Thus, Mr. Phipps has not shown that the state appellate court decision was contrary to clearly established federal law under *Hill*.

The Court further finds that the state court decision was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts.  In evaluating both *Strickland* prongs*,* the Colorado Court of Appeals found that

> (1) Mr. Phipps' counsel advised the trial court that "a matter of great importance to my client is that he does want the Court to know – and we will expend on this at sentencing – that violence – no use of violence or threat of violence was ever made;" and

> (2) Mr. Phipps told the court "the only right and proper choice of direction for me was to plead guilty, to take full responsibility for what I have done . . . I could not put [the victim] or my family through the horrific ordeal with a jury trial . . . [but] "if you believe nothing else that I said or I will say, please believe me there was never any violence or threats of violence, ever."

Docket No. 41-1 at 23-24; *See also* State Court R. 10/31/11 Tr. 8:22-9:6; 1/13/12 Tr. 24:9-23.

The Court presumes these factual determinations are correct, and Mr. Phipps bears the burden of rebutting the presumption by clear and convincing evidence.  *See* 28

U.S.C. § 2254(e)(1).  Although Mr. Phipps obviously disagrees with the state appellate court's factual findings premised on the statements he and his counsel made in connection with his decision to plead guilty to sexual assault of a child, Mr. Phipps does not present clear and convincing evidence to overcome the presumption of correctness afforded these factual findings.  Further, based on the factual findings as reflected in the state court record, this Court cannot find it was unreasonable for the Colorado Court of Appeals to conclude that the ineffective assistance of counsel claim lacked merit because Mr. Phipps failed to demonstrate that his counsel's performance was deficient, and that he was prejudiced by the alleged failure to advise him that he was pleading guilty to a crime of violence for sentencing purposes.

In short, Mr. Phipps fails to demonstrate that the state appellate court decision (1) contradicted or misapplied clearly established federal law because it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  S*ee* 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 103.

Accordingly, the Court will deny habeas relief for Claim 1.

## C.  Claims 2 and 3

Mr. Phipps next contends that his attorney rendered ineffective assistance in failing to conduct a proper investigation and challenge the legality of the search of his home computer.  Docket No. 14 at 11-15.

The Colorado Court of Appeals analyzed the alleged Fourth Amendment failure as follows:

> We first address Phipps' argument that his counsel provided deficient representation when he failed to challenge the legality of the initial, remote search of his computer. The district court rejected this claim, concluding that there was no arguable basis to make such a challenge and that the challenge inevitably would have failed.

> The police initially discovered child pornography on Phipps' computer by using LimeWire, which is a "peer-to-peer file sharing application that connects users who wish to share data files with one another." *United States v. Stults,* 575 F.3d 834, 842 (8th Cir. 2009) (quoting *United States v. Lewis*, 554 F.3d 208, 211 (1st Cir. 2009)).[2]

> The Eighth Circuit described the operation of LimeWire software as follows:

>> When a user wants to download files from other users, he launches LimeWire and inputs a search term or terms. The application then seeks matches for those terms in the file names and descriptions of all files designated for sharing on all computers then running the LimeWire application. . . . LimeWire will then display a list of file names that match the search terms, and the user can select one or more of those to begin downloading the files.

> *Id.* (citations and alteration omitted).

> When the police conducted the initial Internet search of computers to uncover child pornography, they did not have a warrant to search any particular computer. Phipps contends that the initial discovery of child pornography files on his computer constituted a warrantless search that violated the Fourth Amendment.

---

[2] On petition for rehearing, Phipps argues that FrostWire, not LimeWire, was installed on his computer. FrostWire and LimeWire are sister programs, both of which permit users to share files on the internet. *United States v. Robinson,* 714 F.3d 466, 468 (7th Cir. 2013). For present purposes, whether Phipps had installed FrostWire or LimeWire on his computer makes no difference.

A search violates the Fourth Amendment only when the defendant has a "legitimate expectation of privacy in the areas searched or the items seized." *People v. Curtis*, 959 P.2d 434, 437 (Colo. 1998) (citation omitted). No Colorado appellate court has addressed whether a person has a legitimate expectation of privacy in computer files accessed through peer-to-peer sharing software such as LimeWire. However, federal and other state courts have uniformly held that a person who installs and uses file sharing software does not have a reasonable expectation of privacy in those files.

The leading case is *United States v. Ganoe,* 538 F.3d 1117, 1127 (9th Cir. 2008). There, the court held that while, generally, an individual has a reasonable expectation of privacy in his or her personal computer, that expectation does not survive the installation and use of file sharing software, such as LimeWire, at least with respect to the files made available through the file sharing software. *Id.*; *see also United States v. Borowy,* 595 F.3d 1045 (9th Cir. 2010).

In *Stults*, 575 F.3d at 843, the Eighth Circuit similarly held that the defendant did not have a "reasonable expectation of privacy in files that the FBI retrieved from his personal computer where [the defendant] admittedly installed and used LimeWire to make his files accessible to others for file sharing." The court analogized the defendant's actions to giving his house keys to all of his friends, and concluded that he "should not be surprised should some of them open the door without knocking." *Id.*

Other federal and state courts have reached the same result. *See United States v. Conner,* 521 F. App'x 493, 498 (6th Cir. 2013) (computer user had no reasonable expectation of privacy in the contents of files that had been downloaded to a publicly accessible folder through file sharing software); *United States v. Perrine,* 518 F.3d 1196, 1205 (10th Cir. 2008) (same); *State v. Welch,* 340 P.3d 387, 391 (Ariz. Ct. App. 2014) (same*); State v. Aston,* 125 So. 3d 1148, 1154 (La. Ct. App. 2013) (same); *State v. Peppin,* 347 P.3d 906, 911 (Wash. Ct. App. 2015) (same). Indeed, we have found no reported case that has held that a computer owner has a reasonable expectation of privacy in files that he or she makes available through software such as LimeWire.

Phipps argues that he nevertheless retained a reasonable expectation of privacy in his computer files because he was not aware that the files stored on his computer were publicly accessible through LimeWire, and that, therefore, he did not "knowingly or intelligently allow[] private files and information on his PC to be broadcast out to the network and web." The Ninth Circuit Court of Appeals rejected a similar argument

in *Borowy*. In that case, the defendant had installed a feature which allowed him to prevent others from downloading or viewing his files, but that feature was not engaged when the police located the files. *Borowy,* 595 F.3d at 1047. The court concluded that because the files were "still entirely exposed to public view," the defendant's "subjective intention not to share his files did not create an objectively reasonable expectation of privacy in the face of such widespread public access." *Id.* at 1048. We agree with this analysis.

Consistent with these cases, we hold that Phipps did not have a reasonable expectation of privacy in the files that he made available for public viewing through LimeWire. Because Phipps did not have a reasonable expectation of privacy in those files, his counsel's failure to challenge the search on Fourth Amendment grounds, even if deficient, could not have constituted *Strickland* prejudice.

It is unclear whether Phipps argues that because the initial, remote search of the computer was unlawful, so was the search warrant that was based on the initial search. Because the initial electronic search of the computer was lawful and the police discovered unlawful child pornography in that search, the resulting issuance of the search warrant was clearly lawful. *People v. Rabes,* 258 P.3d 937, 941 (Colo. App. 2010) (images of child pornography may be used to establish probable cause for a search warrant).

To the extent that Phipps argues that he had not installed peer-to-peer file sharing software on his computer and that the software was planted by the police, that argument is directly refuted by the record. According to the presentence report, Phipps told the police that he used LimeWire (or its sister program, FrostWire) to download child pornography. Furthermore, the district court correctly concluded, based on the entirety of the record, that "there is no reasonable basis for believing that the government has planted, destroyed, or lost computer evidence."

Docket No. 41-1 at 9-15.

Here, Mr. Phipps primarily argues that the state appellate court's decision was

based on an unreasonable determination of the facts in light of the evidence presented.

He specifically challenges the state court's factual determination that he "installed and

used LimeWire to make his files accessible to others for sharing" and that the police

used LimeWire to discover the unlawful child pornography.  *See* Docket No. 14 at 12-13; Docket No. 41 at 12.

Mr. Phipps again fails to rebut the presumption of correctness afforded the state appellate court's determination of the facts.  The Colorado Court of Appeals stated that the police did not have a warrant to search any particular computer, but initially discovered child pornography on Mr. Phipps' computer by using LimeWire, a peer-to-peer sharing application.  Docket No. 41-1 at 10.  The state appellate court later noted that LimeWire and FrostWire are sister programs, which permit users to share files on the internet, and whether it was LimeWire or FrostWire did not change its analysis of Mr. Phipps' ineffective assistance of counsel claims based on a failure to challenge the search of his home computer.  *Id.*  Aside from his conclusory allegations that he did not download LimeWire and that the police could not have utilized LimeWire, Mr. Phipps does not present any clear and convincing evidence to overcome the presumption of correctness afforded that state court factual finding that police uncovered child pornography on Mr. Phipps' computer by using peer-to-peer sharing software.  *See* 28 U.S.C. § 2254(e)(1).

Mr. Phipps second argument -- that because he had "no knowledge of the design of the FrostWire software," his expectation of privacy was not relinquished for Fourth Amendment purposes.  Docket No. 41 at 10, 13-16.  This assertion does not demonstrate that the state appellate court's decision was contrary to, or involved an unreasonable application of, *Strickland* under § 2254(d)(1).  Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the

merits." *Cullen*, 563 U.S. at 181. Therefore, the Court must limit its review of Claims 2 and 3 to the evidence presented to the state courts in the postconviction proceedings.

The Colorado Court of Appeals recognized that a search violates the Fourth Amendment only when there is a "legitimate expectation of privacy." Docket No. 41-1 at 11. The Colorado Court of Appeals reasonably concluded that Mr. Phipps' counsel was not deficient because "there was no arguable basis to make such a challenge and that the challenge inevitably would have failed" based on federal and state law holding that computer users have no reasonable expectation of privacy in the contents of files downloaded to a publicly accessible folder through file sharing software. Docket No. 41-1 at 9.

The Court finds that the Colorado Court of Appeals correctly cited federal law concerning Fourth Amendment principles and reasonably concluded that Mr. Phipps could not demonstrate any *Strickland* prejudice based on counsel's decision to forego a Fourth Amendment challenge because Mr. Phipps did not retain an expectation of privacy in his shared computer files. Docket No. 41-1 at 11-13. Therefore, Mr. Phipps has not established that defense counsel's performance was objectively unreasonable. Nor does Mr. Phipps establish prejudice given that any such challenge lacked merit.

This Court cannot find that the state court decision (1) contradicted or misapplied clearly established federal law because it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement;" or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. S*ee* 28 U.S.C.

§ 2254(d); *Richter*, 562 U.S. at 103.

Accordingly, Claims 2 and 3 are without merit and will be denied.

### D.  Claims 4, 5, and 6

Mr. Phipps contends his attorney was deficient in failing to conduct an independent investigation or hire an expert to review the computer evidence against Mr. Phipps and the forensic procedures used by the state.  Docket No. 14 at 21-22.  He further claims that his counsel failed to ensure preservation and review of the computer evidence and the "botched" forensic investigation.  *Id.* at 22-24.

The Colorado Court of Appeals rejected this IAC claim for the following reasons:

> Phipps argues that his counsel failed to investigate whether he had ever shared pornographic material, which he denied that he had ever done. He also argues that he believed that the police investigation of his computer was "botched," and therefore his counsel erred in refusing to request a report of the forensic investigation or to hire an expert to determine if the police investigation had been properly conducted.

> Sharing of pornography was not an element of sexual assault on a child – the only charge to which Phipps pleaded guilty – or of any of the other charges that were dismissed.  Indeed, the prosecution stated during the sentencing hearing that it did not believe that Phipps had shared the video of his stepdaughter, and the court stated: "I happen to believe that it is true that you did not send [the video] on the [I]nternet, I don't think that you did."  Thus, whether Phipps had shared pornographic material was irrelevant to his plea agreement.

> Even if it were true that the lawful, forensic investigation of his computer was "botched," and that Phipps' counsel was deficient in failing to investigate whether the investigation had been properly conducted, the claim nevertheless failed the prejudice prong of *Strickland.*  Phipps admitted that he possessed numerous files containing child pornography on his computer, and that he produced a video of him sexually assaulting his underage stepdaughter.

Docket No. 41-1 at 16-17.

Mr. Phipps does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Therefore, he is not entitled to relief with respect to Claims 4, 5, and 6 under the "contrary to" clause of § 2254(d)(1).

Mr. Phipps also fails to demonstrate that the state appellate court's ruling regarding whether he was prejudiced by counsel's performance was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2) or an unreasonable application of *Strickland* under § 2254(d)(1). Again, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181. Therefore, the Court must limit its review of Claims 4, 5, and 6 to the evidence presented to the state courts in the postconviction proceedings. The Colorado Court of Appeals stated that Mr. Phipps admitted he had produced a pornographic video of him committing a sexual assault on his stepdaughter. *See* Docket No. 41-1 at 17. Mr. Phipps does not present any clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual determination. *See* Docket No. 41-1 at 17. Further, given the evidence of the crime to which Mr. Phipps pleaded guilty, in the form of forensic computer evidence, Mr. Phipps simply cannot show that his counsel's advice to plead guilty was deficient.

Ultimately, Mr. Phipps is not entitled to relief because he fails to demonstrate that the state court decision (1) contradicted or misapplied clearly established federal law because it "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement"; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. S*ee* 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 103.

The Court, therefore, will deny habeas relief for Claims 4, 5, and 6.

### E.  Claim 7

Mr. Phipps asserts he received ineffective assistance because his counsel conspired with the state to falsify transcripts by extracting substantial parts of the January 13, 2012 sentencing hearing.  Docket No. 14 at 24-25.

The Colorado Court of Appeals denied this claim as follows:

> There is no evidence in the record that the court either altered or failed to review any properly filed motion.  The court appropriately refused to review a 140-page document, styled as a Crim. P. 35(c) motion, which was apparently filed by a person acting on Phipps' behalf.  That person was not a lawyer and therefore the court had no obligation to review it, and, indeed, could not.  § 12-5-101(1), C.R.S. 2016.  The court did review and rule on the replacement Crim. P. 35(c) motion filed by Phipps.
>
> There is also no evidence whatsoever on this record that the sentencing transcript was altered.  Even if it were altered, Phipps does not identify what portions of the transcript were missing or how he has been prejudiced.  We therefore reject this conclusory allegation of error.  *People v. Zuniga,* 80 P.3d 965, 973 (Colo. App. 2003).

Docket No. 41-1 at 24-25.

Here, Mr. Phipps asserts he would not have pled guilty if he had known that the prosecution had already "wiped" his computer prior to sentencing.  Docket No. 14 at 24-25.  Mr. Phipps, however, offers no explanation as to how this allegation is connected to the claim that his counsel was ineffective.  His conclusory allegations of ineffective

assistance are insufficient to meet the standard imposed by *Strickland*. *See Cummings v. Sirmons,* 506 F.3d 1211, 1228-29, 31-32 (10th Cir. 2007) (holding that allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*).

Mr. Phipps also fails to demonstrate that the state court's ruling was based on an unreasonable determination of the facts, or its resolution of the claim was an unreasonable application of clearly established federal law. Mr. Phipps has not identified evidence supporting his assertion that the sentencing transcript was altered or how the alleged alteration would have changed the outcome of his guilty plea. The record shows that, during sentencing, Mr. Phipps exercised his right to allocution and made incriminating statements by admitting to the acts, taking full responsibility for his crime, and expressing remorse and a promise to "never stray from my path of redemption and rehabilitation from anyone that will let me pursue it." State Court R., 1/13/12 Tr. 25:17-19. The record further demonstrates that four months after sentencing, Mr. Phipps filed a motion for reconsideration of sentence in which he continued to admit he was guilty of sexually assaulting his stepdaughter; he was pleading guilty to avoid putting his stepdaughter through the agony of a protracted jury trial; and he hoped to obtain treatment to address his "deviant behavior." State Court R., at 79-82. It is well-established that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). The record directly refutes Mr. Phipps' assertion that he would have proceeded to go to trial had he known that the prosecutor had "wiped" his computer or that the sentencing transcript had been altered.

Ultimately, Mr. Phipps is not entitled to relief for this claim because he fails to demonstrate that the state court ruling (1) involved an unreasonable application of federal law because it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 103.

The Court will deny habeas relief for Claim 7.

**F.  Claim 11**

Mr. Phipps contends he received ineffective assistance "surrounding the sexual history review in the plea agreement" because defense counsel failed to inform him that the sexual history review "may carry the risk of prosecution."  Docket No. 14 at 29-30.

The Colorado Court of Appeals construed and rejected this claim as follows:

> Phipps argues that had he known that as a condition of his parole eligibility he might be required to reveal past crimes, exposing him to additional criminal charges, he would not have pleaded guilty.  He asserts that his counsel failed to advise him of the possibility of self-incrimination, and that the parole eligibility requirement to disclose additional crimes violates his Fifth Amendment rights.
>
> Phipps' contention that he was not advised of the requirement to disclose past crimes is refuted by the record.  By signing the plea agreement, Phipps acknowledged that he would be required to submit to a sexual history interview, which would reasonably include past sexual crimes.  Nowhere in the plea agreement does it state that Phipps would be immune from additional charges based on the revelation of additional crimes.

Docket No. 41-1 at 18-19.

Mr. Phipps does not identify any materially indistinguishable Supreme Court

26

decision that would compel a different result. *See House*, 527 F.3d at 1018. Therefore, he is not entitled to relief with respect to Claim 11 under the "contrary to" clause of § 2254(d)(1).

Mr. Phipps also fails to demonstrate that the state court's ruling was based on an unreasonable application of *Strickland* under § 2254(d)(1) or an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). The plea agreement specifically states that:

> I understand that upon a plea of guilty to . . . Sections 18-3-405, 18-3-405.3 . . . I agree to and will be required to undergo and pay the expense of, based on my ability to pay, a mental health offense sex offense specific evaluation which conforms with the standards developed by the Colorado Sex Offender Management Board, including:
>
> (a) a structured clinical and *sexual history interview* and offense specific psychological testing, and
>
> (b) physiological testing or some other means of measuring deception and/or deviant sexual arousal.

State Court R. at 52-53.

Mr. Phipps further affirmed, in writing and at the plea hearing, that he had read and understood the plea agreement he signed. *Id.* at 54; Trial Tr. 2:19-4:19. Mr. Phipps did not present the state courts, nor has he presented this Court, with any convincing evidence that he was not aware he was required to submit to a sexual history interview, which reasonably would include past sexual crimes. Therefore, based on the state court's factual determinations, the Court finds the state court's legal conclusion that counsel was not ineffective in failing to advise Mr. Phipps of the consequences of his guilty plea, including the possibility of self-incrimination, was not unreasonable.

In short, Mr. Phipps fails to demonstrate that the state appellate court's decision

(1) contradicted or misapplied clearly established federal law because it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"; or (2) was based on an unreasonable determination of the facts. S*ee* 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 103.

Accordingly, the Court will deny habeas relief for Claim 11.

## G.  Claim 13

Mr. Phipps contends his attorney erroneously advised him that he would serve "60% or less" of his sentence in prison before being eligible for parole. Docket No. 14 at 30.

The Colorado Court of Appeals rejected this claim because the record directly refutes Mr. Phipps' position.  Specifically, the plea agreement provides:

> I understand that if I am sentenced to the Department of Corrections, *upon completion of the minimum period of incarceration specified in the indeterminate sentence*, the State Board of parole will hold a hearing to determine whether to release me on parole.  The parole board will determine whether I have successfully progressed in treatment and whether I would not pose an undue threat to the community and whether there is a strong and reasonable probability I will violate the law, in order to determine whether to release me on parole.  The Department of Corrections will make recommendations to the State Board of Parole concerning whether to release me on parole and under what conditions.

State Court R., at 48-50 (emphasis added).  Based on the agreement, the state appellate court found that

> "[e]ven if Phipps' counsel had given him advice that was different from the information in the plea agreement, he was required to seek clarification when given an opportunity to do so.  *People v. DiGuglielmo,* 33 P.3d 1248, 1251 (Colo. App. 2001).  Phipps failed to seek clarification, and he cannot now claim as a basis for postconviction relief that he was

confused at the providency hearing."

Docket No. 41-1 at 21-22.

This Court cannot conclude that the state appellate court's decision was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court must presume, as the state court found, that Mr. Phipps was advised in his written plea agreement that he must complete the minimum prison sentence specified in the indeterminate sentence he received, *i.e.,* 17 years. He also indicated that he fully understood the sentencing ranges he faced. State Court Record, at 48-50; 10/31/11 Trial Tr. 6:15-7:7. Although the presumption that these factual findings are correct may be rebutted by clear and convincing evidence, Mr. Phipps fails to present such evidence. *See* 28 U.S.C. § 2254(e)(1).

Mr. Phipps further fails to demonstrate that the state court's resolution of the claim was contrary to, or an unreasonable application of, clearly-established federal law. *See Chrisman v. Mullins,* 213 F. App'x 683, 689 (10th Cir. 2007) (unpublished) (recognizing that, as a matter of law, defendant's confusion regarding parole did not render his plea involuntary based upon a unilateral expectation of parole) (citing *Worthen v. Meachum,* 842 F.2d 1179, 1184 (10th Cir. 1988) ("A defendant's expectation of parole that is based on a bad guess by his attorney does not render a plea involuntary.")). And under *Blackledge,* the Court may dismiss habeas corpus claims based on alleged "unkept promises and misunderstandings when the court record refutes the claim." *Lasiter v. Thomas,* 89 F.3d 699, 703 (10th Cir. 1996). Based on the state court's factual determinations set forth above, the Court finds that the state court's legal determination

that counsel was not ineffective is not an unreasonable application of clearly established federal law.

As such, the Court will deny Claim 13.

### H. Claims 9 and 12

Mr. Phipps contends that defense counsel's deficient performance as asserted above and his "deliberate" lies resulted in cumulative error, which prejudiced him. Docket No. 14 at 27-28, 30.

Although Mr. Phipps asserted a cumulative error argument in his postconviction briefs, the Colorado Court of Appeals did not address a cumulative error claim. Thus, the deferential AEDPA standards do not apply, and the Court reviews "questions of law *de novo* and questions of fact for clear error." *Cook v. McKune,* 323 F.3d 825, 830 (10th Cir. 2003) (citation omitted).

"[T]he only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (internal quotation marks omitted). The Court has not found two or more constitutional errors during Mr. Phipps' criminal proceedings that would warrant a cumulative-error analysis. As a result, he is not entitled to relief with respect to Claims 9 and 12.

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Phipps is not entitled to relief on his

remaining claims.  Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 14] is denied and this case is dismissed with prejudice.  It is further

ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  It is further

ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED September 12, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge